416 F.2d 1225
 S. S. KRESGE COMPANY, K-Mart Division, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, and
Retail Store Employees Union, Local 36, RCIA, AFL-CIO, Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
F & G MERCHANDISING, INC., Cunningham Drug Stores, Inc., Holly Stores, Inc., Miles Shoes, Dunham's Garden City, Inc., Schiller Co., and Levitt Co., Respondents, and
Retail Store Employees Union, Local 36, RCIA, AFL-CIO, Intervenor.
ACME QUALITY PAINTS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, and
Retail Store Employees Union, Local 36, RCIA, AFL-CIO, Intervenor.
 No. 18524.
 No. 18622.
 No. 18634.
 United States Court of Appeals Sixth Circuit.
 October 15, 1969.
 
 COPYRIGHT MATERIAL OMITTED John C. Donnelly, Detroit, Mich., for S. S. Kresge, John C. Donnelly, Peter A. Davis, Clark, Klein, Winter, Parsons & Prewitt, Detroit, Mich., on brief.
 Franklin D. Dougherty, Detroit, Mich., for F & G Merchandising, Inc., Miles Shoe Co., Dunham's Garden City, Inc., Schiller Millinery Stores, Inc. and Holly Stores, Inc.
 David K. Page, Edward R. Stein, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., on brief for Cunningham Drug Stores, Inc.
 A. D. Childs, Robert Bielek, Cleveland, Ohio, on brief for Acme Quality Paints, Inc.
 Richard S. Rodin, N.L.R.B., Washington, D. C., for N.L.R.B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N.L.R.B., Washington, D. C., on brief.
 Theodore Sachs, Detroit, Mich., for Retail Store Employees Union, Local 36, RCIA, AFL-CIO, Rothe, Marston, Mazey, Sachs & O'Connell, Detroit, Mich., on brief.
 Before PHILLIPS, McCREE and COMBS, Circuit Judges.
 McCREE, Circuit Judge.
 
 
 1
 Cases numbered 18,524 and 18,634 are before the court on petitions to review and set aside an order of the National Labor Relations Board, and on the Board's cross-petitions to enforce that order. Case numbered 18,622 is before the court on the Board's petition to enforce, and respondent's cross-petition to review and set aside, the same order. The Board's decision and order in these consolidated cases are reported at 169 NLRB No. 61 (1968).
 
 
 2
 S. S. Kresge Company, petitioner in case numbered 18,524, operates a nationwide chain of discount department stores under the trade-name K-Mart. Most K-Mart stores contain various sales departments, some of which are operated by Kresge and some of which are operated by various licensees. However, the public is given the impression of a single, integrated enterprise since, under the terms of the uniform license agreement governing Kresge's relationships with its licensees, each licensee must "conduct sales on the premises solely under the name of K-Mart."
 
 
 3
 The K-Mart store involved in the present litigation is located in Jackson, Michigan. The licensees in the Jackson store include F & G Merchandising, Inc. (automobile supplies and service dept.); Cunningham Drug Stores, Inc. (drug and pharmaceutical dept.); Miles Shoe Co. (footwear dept.); Dunham's Garden City, Inc. (sporting goods dept.); Schiller Millinery Stores, Inc. (millinery dept.); Acme Quality Paints, Inc. (home improvement dept.); Holly Stores, Inc. (women's and children's wear dept.); and Wrigley's Supermarkets, Inc. (grocery dept.). These licensees employ approximately 63 of the 163 employees working at the Jackson K-Mart.
 
 
 4
 On February 12, 1965, the Retail Store Employees Union, Local 36, filed with the Board's Regional Director a representation petition seeking certification as the bargaining representative of a store-wide unit at the Jackson K-Mart. The proposed unit included all Kresge employees and the employees of seven of the eight licensees.[1] The Regional Director consolidated this petition with two others which had been filed previously by another union[2] and conducted a hearing pursuant to Section 9(c) of the Labor-Management Relations Act, 29 U.S.C. § 159(c). On June 15, 1965, he issued his Decision, Order, and Direction of Election in which he decided that "although K-Mart exercises a general control over the operational policies of [its] licensees, there is no common control over the labor relations of the latter." Accordingly, the Regional Director concluded that Kresge and its licensees were not joint-employers of the employees in the licensed departments and that a storewide unit would not be appropriate for purposes of collective bargaining.
 
 
 5
 On November 16, 1966, the Board reversed the findings of the Regional Director. 161 NLRB No. 92 (1966). It found that under the license agreement Kresge retained "the power substantially to affect the employment conditions of employees in licensed departments" and that a joint-employer relationship did exist. Accordingly, the Board ordered an election in a unit consisting of all Kresge employees and the employees of seven of the eight licensees in the Jackson K-Mart.[3]
 
 
 6
 The union won the election 113 to 31 and was certified as the employees' bargaining representative on February 27, 1967. However, Kresge and its licensees continued to protest the appropriateness of the bargaining unit and refused the union's request to enter into negotiations. They also contended that substantial changes in the factual situation since the date of the representation hearing before the Board had rendered the original determination inappropriate.
 
 
 7
 On May 10, 1967, the General Counsel issued a complaint charging the employers with a refusal to bargain in violation of Sections 8(a) (5) and 8(a) (1) of the Labor-Management Relations Act, 29 U.S.C. § 158(a) (5) and § 158(a) (1). The Trial Examiner concluded that there had been no changes in the K-Mart operation which had rendered the Board's determination of a storewide unit inappropriate and that the employers had unlawfully refused to bargain. He also found that Holly Stores, Inc. was a successor employer to Countess Joy Dress Corp. (the licensee of the women's and children's wear department at the time the original representation petition was filed) and was therefore bound by the Board's determination of a joint-employer relationship between Kresge and Countess Joy.[4] Finally, the Trial Examiner found that Acme Quality Paints, Inc. had committed independent violations of Section 8(a) (5) by unilaterally changing the working conditions of its employees subsequent to the union's certification as the employees' bargaining representative.[5] The Board affirmed the findings[6] of the Trial Examiner and ordered the employers to cease and desist from committing the violations of Section 8(a) (5) and to bargain with the union upon request.
 
 REPRESENTATION PROCEEDING
 
 8
 It is undisputed that Kresge and its licensees refused to bargain with the union despite its election victory and certification by the Board. The employers contend, however, that their refusals were justified because the Board erred in finding that a joint-employer relationship exists and that a storewide unit is the appropriate bargaining unit in the Jackson K-Mart department store. Our decision whether to enforce the Board's order in the unfair labor practice proceeding therefore depends on the appropriateness of the Board's findings in the underlying representation proceeding.
 
 
 9
 Initially, we observe that we are not the first federal appellate court to review a Board finding that in a K-Mart store Kresge and its licensees are joint-employers and a storewide unit is appropriate for purposes of collective bargaining. In Gallenkamp Stores Co. v. N.L.R.B., 402 F.2d 525 (9th Cir. 1968), the court considered this issue and upheld the Board's designation of a storewide unit in the Commerce, California K-Mart. We agree with that decision.
 
 
 10
 The scope of judicial review of Board findings in representation proceedings is limited. Congress has provided that:
 
 
 11
 The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof. Section 9(b) of the Labor-Management Relations Act, 29 U.S.C. § 159(b).
 
 
 12
 Accordingly, courts are reluctant to disturb Board determinations and will do so only if they are arbitrary or capricious. See Local 620, Allied Industrial Workers of America v. N.L.R.B., 375 F.2d 707 (6th Cir. 1967); Uyeda v. Brooks, 365 F.2d 326 (6th Cir. 1966); N.L.R.B. v. Prudential Life Insurance Co., 154 F.2d 385 (6th Cir. 1946). Accord, Gallenkamp Stores Co. v. N.L.R.B., supra; S. D. Warren Co. v. N.L.R.B., 353 F.2d 494 (1st Cir. 1965).
 
 
 13
 In the present case, the Board's conclusions that Kresge and its licensees are joint-employers and that a storewide unit is appropriate were based on its finding that Kresge had retained the right to control substantially the labor relations of the various licensees. See Frostco Super Save Store, Inc., 138 NLRB 125 (1962); United Stores of America and Collins Mart, Inc., 138 NLRB 383 (1962); Spartan Department Stores, 140 NLRB 608 (1963); United Mercantile, Inc. d/b/a Globe Discount City, 171 NLRB No. 103 (1968). Neither of these conclusions, or the finding on which they are based, are arbitrary or capricious.
 
 
 14
 Kresge's ultimate authority over the labor relations of its licensees is established by Paragraph 10 of the uniform license agreement, which confers upon Kresge alone the power to "establish, amend, modify or revise uniform Rules and Regulations * * * which shall govern but not be limited to the followin subjects: order and appearance of the store, * * * employment practices, personnel and store policies * * *." This provision is supplemented by Paragraph 21(D) of the uniform license agreement, which provides: "Should the Licensee not comply with the Rules and Regulations established by the Licensor * * * the Licensor may terminate the License upon 30 days written notice * * *."
 
 
 15
 Pursuant to its authority under the license agreement, Kresge has promulgated a number of Rules and Regulations related to employment conditions which are usually considered within the sphere of mandatory collective bargaining. For example, the Rules and Regulations provide that the licensor and the licensee will not "hire an employee or former employee of the other without first checking" with each other; that the licensee will take immediate remedial action if the K-Mart manager decides that there is insufficient help or an employee is "inefficient" or "objectionable";[7] that the licensee will remain open for business "during hours established by [the] Licensor";[8] that the licensee will "not permit the continuance of a labor dispute involving its department which materially affects the sales or threatens the operation of other Licensees or Licensor"; that employees must "avoid loud talking across the store, chewing gum, using too much make-up * * * [visiting] with friends while on duty * * * [and] smoking in the department"; that male employees must wear jackets and ties and female employees must wear "uniform smocks or aprons";[9] that any female employee who works more than four hours consecutively must be "given a fifteen minute rest period within that time"; and that employee purchases "must be taken unsealed to a supervisor designated by the licensor".
 
 
 16
 Kresge contends that despite these provisions it has not retained sufficient control over its licensees' labor relations to support the finding of a joint-employer relationship. It relies on a series of Board decisions which indicate that a licensor must control the essential elements of its licensees' labor relations in order to be a joint-employer of their employees. See S.A.G.E., Inc. of Houston, 146 NLRB 325 (1964); Bab-Rand Co., 147 NLRB 247 (1964); Esgro Anaheim, Inc., 150 NLRB 401 (1964). Kresge contends that at the Jackson K-Mart it does not possess such control. It points to the provision of the Rules and Regulations which states that "All hiring and terminations * * * will be under the supervision of the Licensee's manager." Moreover, Kresge maintains that in practice, wages and employee discipline also are primarily the responsibility of the licensee.
 
 
 17
 We agree with the assertion that control of the essential elements of labor relations is a prerequisite to the existence of a joint-employer relationship. This, however, is precisely the type of control Kresge has retained and exercised at the Jackson K-Mart. If the K-Mart manager decides that a licensee has insufficient help or an objectionable employee, pursuant to his authority under the Rules and Regulations, he can require immediate "correction of the condition." In other words, he can either compel the licensee to hire more employees or to discharge those already employed. If a licensee becomes involved in a "labor dispute" related to wages or employee discipline, the Rules and Regulations require that the licensee prevent continuance of the dispute if the sales or operation of the store are threatened. In other words, the licensee must either yield to the employee demands or face termination of its license by the licensor. Further, if a licensee decides to remain open during hours other than those set by Kresge or to alter the attire of its employees, it again risks termination of its license under the Rules and Regulations established by Kresge.
 
 
 18
 Under these circumstances many decisions with respect to the aforementioned essential aspects of labor relations which a licensee might make would be ephemeral at best, since Kresge could overrule them. Thus, it would be impossible for a licensee to enter into a binding collective bargaining agreement without Kresge's consent. Accordingly, the Board correctly concluded that Kresge retained "the power to affect substantially the employment conditions of employees in licensed departments" and is a joint-employer of those employees.
 
 
 19
 Kresge also contends that the Board's decision in the representation proceeding violates the rule enunciated in N. L. R. B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). In Metropolitan Life the Supreme Court held that the Board must articulate reasons for its orders so that courts can properly review those orders. Kresge contends that the Board violated this principle because in a prior decision involving the joint-employer issue, Thriftown, Inc., 161 NLRB 603 (1966), the Board "abandoned long standing criteria for determining a joint-employer relationship without articulating sound reasons therefor" and that prior decision "undoubtedly had a strong influence on the Board in the instant case."
 
 
 20
 This same contention was made in Gallenkamp. The court responded by observing that it was "not called upon to enforce or deny enforcement to an order in Thriftown." 402 F.2d at 531. Thus, whether the Board violated the rule of Metropolitan Life in Thriftown is an irrelevancy in the present case. Moreover, in the case at bar the Board has complied with the rule of Metropolitan Life. It has articulated the reasons for its decision and the decision is "within the main stream of Board decisions finding joint-employers when there is control by a licensor over the licensee's labor relations." Gallenkamp Stores Co., supra, at 531.
 
 
 21
 Kresge's final challenge of the Board's decision in the representation proceeding involves considerations of policy. Kresge contends that to compel unwilling employers to bargain as joint-employers will disrupt the collective bargaining process because each licensee may have independent ideas about appropriate labor policy. Kresge also maintains that the rights of the licensees' employees under Section 7 of the Labor-Management Relations Act, 29 U. S.C. § 157, will be impaired because Kresge's employees will outnumber the others and will therefore dominate union policy.
 
 
 22
 Whether either of these asserted practical difficulties will occur is speculative. This is particularly true with respect to the effect of supposed differences of opinion among the employers. As the Ninth Circuit pointed out in Gallenkamp:
 
 
 23
 K-Mart and the licensees have worked out their diverse business problems to meet the needs of their joint enterprise, as is shown in their uniform license agreements. Like efforts should be as effective in their bargaining with the Union. 402 F.2d at 531.
 
 
 24
 Moreover, Kresge can avoid difficulties of this nature altogether by implementing its professed desire to permit each licensee to independently control labor relations. The Board's order does not require Kresge to participate in the negotiations of its licensees. The order only requires that Kresge abide by any agreements consummated as a result of those negotiations.[10]
 
 
 25
 There is the possibility that the employees in the departments operated by Kresge will dominate union policy. This, however, is a problem which is germane to all units encompassing different departments with divergent interests. Indeed, the same problem could arise if the appropriate unit consisted solely of Kresge employees, because employees in larger Kresge departments could impose their decisions on employees in smaller departments. Such a result does not mean that the unit is inappropriate, particularly when, as in the present case, there is a sufficient community of interest among the employees in the unit to suggest the problem will not be serious if it does occur.
 
 
 26
 A number of the licensees contend that they were denied procedural due process in the representation proceeding. They point out that only Kresge and F & G Merchandising were named in the representation petitions and were made parties to the representation proceeding, and they maintain that this denied them their right to a hearing. The Regional Director stated in his decision, however, that:
 
 
 27
 Notice of Hearing was duly served upon the following employers, all operators of licensee departments within the Jackson, Michigan, K-Mart Plaza: K-Mart Drug Department, Division of Cunningham Drugstores, Inc., Joy Stores, Inc., Miles Shoes, Dunham's Garden City, Inc., Schillers Millinery and Levitt Merchandise. Cunningham was represented at the hearing. The latter two firms were completely unrepresented. The remaining three were represented by observers, who did not formally appear or take positions on the record.
 
 
 28
 Thus, each employer was accorded the opportunity to be heard even though each was not formally joined as a party to the proceeding. This provided each with an adequate opportunity to protect its interests and conformed with the requirements of due process. See Local 130, International Union of Electrical, Radio and Machine Workers v. McCulloch, 120 U.S.App.D.C. 196, 345 F.2d 90 (1965).
 
 
 29
 Licensee Cunningham Drug Stores contends that its employees are already covered by an existing collective bargaining agreement and therefore cannot be included in the storewide unit designated by the Board. Cunningham relies on the provision in its present contract with Local 36 of the Retail Store Employees Union which provides that:
 
 
 30
 This agreement shall apply to all employees presently or hereafter employed in stores now or hereafter owned and/or operated by the employer doing business as Cunningham Drug * * * in the [county] of * * * Jackson * * * provided however that this agreement shall not apply to any department operated by employer, in a store in which employer's license agreement relating thereto requires the employees of such department to be covered by the terms and conditions of any valid collective bargaining agreement applicable to the other employees of said store.
 
 
 31
 Cunningham's reliance is misplaced. Although the license agreement with Kresge does not expressly require that Cunningham's employees be covered by a collective bargaining agreement applicable to the other employees at the Jackson K-Mart, it is as a consequence of the license agreement that Cunningham's employees will be covered by any such agreement. This brings Cunningham's K-Mart employees within the ambit of the proviso and excludes them from Cunningham's already existing agreement with Local 36.
 
 
 32
 Licensee F & G Merchandising raises a final objection regarding the representation proceeding. F & G points out that in the same proceeding in which the Regional Director denied the petition of the Retail Store Employees for representation of a storewide unit, he granted the petition of the International Brotherhood of Teamsters for representation of a unit consisting solely of F & G employees.[11] No petition to review this latter decision was ever filed and F & G contends that it therefore became final upon expiration of the period for filing a petition to review. See N.L.R.B. Rules & Regulations, § 102.67(b), 29 C.F.R. § 102.67(b).
 
 
 33
 The contention is without merit. Prior to the Board's decision in the representation proceeding the Teamsters' petition was withdrawn with the approval of the Regional Director and there was therefore no extant unit determination involving F & G when the Board issued its direction of election. Moreover, a timely petition for review of the Regional Director's decision denying the Retail Store Employees' request for a storewide unit was filed. This necessarily presented to the Board the issue of whether F & G should be part of that unit and therefore the Board properly considered this issue. Cf. N. L. R. B. v. WTVJ, Inc., 268 F.2d 346, 348 (5th Cir. 1959); N. L. R. B. v. Monsanto Chemical Co., 205 F.2d 763 (8th Cir. 1953).
 
 UNFAIR LABOR PRACTICE PROCEEDING
 
 34
 After the Board's decision in the representation proceeding, Kresge executed two documents: a letter stressing the independence of its licensees in labor relations matters and a memorandum of understanding reaffirming its intention that each licensee should devise its own labor policies.[12] Kresge contends that these two documents substantially changed the factual situation on which the Board relied in designating a storewide unit and rendered that unit inappropriate.
 
 
 35
 The Trial Examiner refused to consider the documents in reaching his decision that Kresge and its licensees had unlawfully refused to bargain. However, the Board overruled the Trial Examiner and admitted both documents into evidence.[13] The Board then decided that they did not significantly change the factual situation and did not invalidate the original unit determination. We agree.
 
 
 36
 The letter merely restated the interpretation of the license agreement advanced by Kresge, and rejected by the Board, at the representation proceeding. It did not alter the nature of the relationship established by the license agreement. The memorandum of understanding also was neutral in terms of its effect on the facts on which the Board relied in finding the existence of a joint-employer relationship. It declared in Clause two:
 
 
 37
 [N]one of the provisions of the License Agreement * * * shall * * * be construed as granting to K-Mart DIVISION any measure of control over the labor policies or labor relations practices of the undersigned licensee.
 
 
 38
 However, this declaration was modified in Clause six by the statement that:
 
 
 39
 K-Mart DIVISION shall continue to exercise the power which it has exercised in the past to prescribe K-Mart Rules and Regulations governing the personal conduct of all officers and employees of each Licensee * * *. (emphasis added).
 
 
 40
 It is the power Kresge "exercised in the past" which resulted in the finding of a joint-employer relationship.
 
 
 41
 Since there were no changes in the factual situation subsequent to the representation proceeding which rendered the Board's designation of a storewide unit inappropriate, the union was the duly certified representative of the employees in that unit at the time it requested recognition. The employers therefore were obligated to accede to this request, and their refusal to do so violated Sections 8(a) (5) and 8(a) (1). Accordingly, the Board's petitions to enforce its order requiring Kresge and its licensees to cease and desist from refusing to bargain and to bargain with the union upon request are granted.
 
 
 42
 Licensee Holly Stores, Inc. contends that despite the validity of the union's certification it should not be required to bargain with the union. Holly points out that its predecessor, Countess Joy Dress Corp., was the licensee of the women's and children's wear department at the time of the original hearing on the representation petitions and that it, Holly, was never a party to that proceeding. Holly contends that this fact should relieve it of any obligation to honor the certification of the union.
 
 
 43
 The Board, however, concluded that Holly was a "successor employer" to Countess Joy and therefore required to accept the bargaining obligation imposed on its predecessor. See Makela Welding, Inc. v. N. L. R. B., 387 F.2d 40, 46 (6th Cir. 1967); N. L. R. B. v. Downtown Bakery Corp., 330 F.2d 921, 925 (6th Cir. 1964). We find substantial evidence in the record considered as a whole to support this conclusion. The operation carried on by Holly was essentially the same as that previously conducted by Countess Joy. Makela Welding, supra, at 46. Accordingly, Holly was properly included in the Board's bargaining order.
 
 
 44
 The final issue in this case concerns the Board's finding that Acme Quality Paints, Inc. independently violated Section 8(a) (5) when it unilaterally changed the working conditions of its employees upon assuming control of the home improvement department. Acme acquired Levitt Co., the original licensee of the home improvement department, on January 1, 1967, and commenced operations on March 1, 1967. The changes in working conditions were instituted on the latter date without consulting either Kresge or the union. Since the union had been certified as the employees' bargaining representative on February 27, 1967, the Board concluded that Acme committed an independent violation of Section 8(a) (5) by failing to consult the union about the changes. See N. L. R. B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); N. L. R. B. v. Aircraft Specialties, Inc., 360 F.2d 600 (6th Cir. 1966).
 
 
 45
 Acme points out, however, that neither the charges filed by the union in April, 1967, nor the complaint issued by the General Counsel in May, 1967, alleged an independent violation of Section 8(a) (5) based on the unilateral changes in working conditions. Acme contends that these omissions precluded the Board from considering whether Acme had committed a separate unfair labor practice by its actions. We agree.
 
 
 46
 It is an essential element of due process that an interested party must be given notice and an opportunity to prepare a defense prior to an adjudicative proceeding. See Boyle's Famous Corned Beef Co. v. N. L. R. B., 400 F.2d 154, 164-165 (8th Cir. 1968); N. L. R. B. v. Majestic Weaving Co., 355 F.2d 854, 861 (2nd Cir. 1966). Despite the fact that Acme changed the working conditions of its employees prior to the union's charges and the General Counsel's complaint, neither the charges nor the complaint informed Acme that its conduct would be considered at the hearing before the Trial Examiner. Thus, Acme was unaware of the necessity of preparing to defend this conduct and the Trial Examiner should not have considered its legality. See Engineers & Fabricators, Inc. v. N. L. R. B., 376 F.2d 482, 485 (5th Cir. 1967); N. L. R. B. v. Majestic Weaving Co., supra; N. L. R. B. v. H. E. Fletcher Co., 298 F.2d 594, 600 (1st Cir. 1962).
 
 
 47
 The Board's contention that the general allegation in the complaint of an unlawful refusal to bargain was sufficient notice is unpersuasive. It is clear that this allegation was directed at the employers' general refusal to negotiate, not Acme's changes in its employees' working conditions. Moreover, the Board's reliance on N. L. R. B. v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed. 2d 1243 (1959) is misplaced. The Supreme Court restricted its holding in that case to "`unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board.'" 360 U.S. at 309, 79 S.Ct. at 1184, quoting from National Licorice Co. v. N. L. R. B., 309 U.S. 350, 369, 60 S.Ct. 569, 84 L.Ed. 799 (1940) (emphasis added).
 
 
 48
 Accordingly, we deny enforcement to the Board's order insofar as it relates to Acme's independent violations of Section 8(a) (5). However, in all other respects the Board's order will be enforced.
 
 
 
 Notes:
 
 
 [1]
 The union did not include Wrigley's Supermarkets, Inc. in its petition. Wrigley's operates under a different license agreement from that signed by the other licensees. Moreover, Wrigley's was already a party to a bargaining agreement with the union
 
 
 [2]
 The other two petitions were filed by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 164. One of the petitions requested an election in a unit consisting solely of Kresge employees and the other requested an election in a unit consisting solely of employees of F & G Merchandising. The Regional Director dismissed the first petition, but granted the request for an election among the employees of F & G. However, before an election could be held, the Teamsters' petition was withdrawn
 
 
 [3]
 The only employees not included were Wrigley'sSee n. 1, supra.
 
 
 [4]
 Holly replaced Countess Joy as the licensee of the women's and children's wear department on January 9, 1966
 
 
 [5]
 Acme acquired Levitt Co., the original licensee of the home improvement department, on January 1, 1967, and instituted the changes in working conditions when it dommenced operations on March 1, 1967
 
 
 [6]
 Although the Board affirmed the Trial Examiner's findings, it reversed his rulings on the admissibility of certain evidenceSee n. 13, infra.
 
 
 [7]
 Hiring practices and tenure of employment may be mandatory subjects of collective bargainingSee N.L.R.B. v. Houston Chapter, Associated General Contractors of America, 349 F.2d 449, 451-452 (5th Cir. 1965); N.L.R.B. v. Tom Joyce Floors, Inc., 353 F.2d 768, 769-771 (9th Cir. 1965).
 
 
 [8]
 Working hours and work days are mandatory subjects of collective bargainingSee Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of North America v. Jewel Tea Co., 381 U.S. 676, 691, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965).
 
 
 [9]
 Company rules concerning employee discipline, smoking and dress are mandatory bargaining subjectsSee Winter Garden Citrus Products Cooperative v. N.L.R.B., 238 F.2d 128, 129 (5th Cir. 1956); Lloyd Fry Roofing Co. v. N.L.R.B., 216 F.2d 273, 274, 276 (9th Cir. 1954).
 
 
 [10]
 Thus, as the Board points out in its brief, Kresge:
 may leave to the respective licensees the sole power to bargain about the hours of the day and days of the week during which employees are required to work. However, thereafter the licensees could not foreclose consideration of Union proposals as to such matters on the ground that K-Mart's Rules and Regulations required the licensees to operate during the periods in question (although they could, of course, resist such proposals on the ground that business considerations called for operations during such periods). Moreover, after having delegated to the respective licensees the sole power to bargain about this issue, [Kresge] would be bound by the agreements reached, and could not thereafter exercise its powers as a licensor to prevent the licensees from honoring them, even though the result was (for example) that employees in the drug, auto service, and home improvement sections * * * did not work evenings or Sundays; employees in the millinery, shoe, and apparel sections * * * did not work on Good Friday or during Passover Week; and the only employees who worked in the evening were those in the departments directly operated by [Kresge]. * * * The unlikelihood that [Kresge] could acquiesce in this kind of result is the very reason why the Board's bargaining order compels [Kresge] to accept responsibility for the negotiations regarding, inter alia, hours of work.
 
 
 [11]
 See n. 2, supra.
 
 
 [12]
 The letter was distributed to K-Mart regional, district and store managers on February 7, 1967. The memoranda of understanding were executed by Kresge and each of its licensees in May, 1967
 
 
 [13]
 The Trial Examiner thought the documents constituted an impermissible attack on the Board's unit determination since they were executed subsequent to that determination. The Board's reversal was based on its conclusion that the documents were new or previously unavailable evidence