467 F.Supp. 568 (1979)
John AUBUCHON, Plaintiff,
v.
Hans OLSEN et al., Defendants.
No. 77-433-C(3).
United States District Court, E. D. Missouri, E. D.
March 30, 1979.
*569 Nancy Everett, St. Louis, Mo., for plaintiff.
Jackson A. Wright, Marvin E. Wright and James S. Newberry, University of Missouri, Columbia, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiff John Aubuchon brought this suit pursuant to 28 U.S.C. §§ 1343 and 1331, alleging a violation of his rights to due process of law.
This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff John Aubuchon is an adult male citizen of the United States residing within the Eastern District of Missouri. Defendant Hans Olsen is the Associate Dean of the School of Education at the University of Missouri-St. Louis. Defendant Julie Popkin is an Instructor of English and Education at the University of Missouri-St. Louis and was, at all times relevant herein, an Instructor of English and Education 262, Curriculum and Methods of Teaching English. Defendant Michele McGrath is the Coordinator of Advisement of Clinical Services in the School of Education at the University of Missouri-St. Louis. Defendant, the Curators of the University of Missouri, is a constitutional body established by Article IX, § 9(a) of the Missouri Constitution of 1945.
2. Plaintiff was enrolled as a full-time student in the Student Teaching Program offered by the School of Education of the University of Missouri-St. Louis; said program *570 included enrollment in the Education 271 and 262 courses. Education 271, Secondary School Teaching, is a required course for those students seeking to obtain certificates to teach in the secondary schools in the state of Missouri. It is a six semester-hour course, conducted in secondary schools in the metropolitan St. Louis area. A student is placed in a secondary school and guidance is provided by the cooperating classroom teacher and a supervisor from the University. Evaluation of the student teacher's performance is the responsibility of the cooperating teacher, the University supervisor and the student teacher.
3. In the fall semester of 1976, plaintiff was assigned as a student teacher at University City Senior High School in University City, Missouri. Albert Salsich, an instructor in English, was plaintiff's cooperating teacher. During the first half of the semester, plaintiff satisfactorily performed his student teaching. At the end of October, however, problems appeared. On October 26, 1976, plaintiff was joking and laughing with students when they were supposed to be working on an art project under the supervision of the art teacher. On October 27, 1976, plaintiff deviated from the lesson plan; instead of having the students work on a magazine project, he lectured for an extensive amount of time on a point of grammar. Since the completion of the magazine project was essential to the students' quarterly grade, Mr. Salsich's ability to evaluate his students was threatened. On October 28, 1976, the lesson plan called for the final examination for the quarter. Plaintiff had previously gone over the examination with Mr. Salsich who told plaintiff to clarify the instructions. Plaintiff came to class just as the class period began. He spent approximately 15 minutes going over instructions, wrote on the blackboard "I have seen the ghost" and asked the students to consider that statement. Later that day, Mr. Salsich discussed his reactions to plaintiff's behavior of the week with plaintiff. Salsich asked plaintiff not to return the following day but to set up an appointment with the assistant principal, Mr. Frank McCallie. Salsich told plaintiff that they would discuss plaintiff's student teaching with McCallie and attempt to reach a resolution. That same day, plaintiff called Michele McGrath to ask what contract existed between University of Missouri-St. Louis and University City School District. McGrath told plaintiff that as a student teacher, he was a guest of the high school. McGrath contacted Mrs. Popkin the following day and related the conversation.
4. On Monday, November 1, 1976, plaintiff called Mrs. Popkin at home at 6:30 a. m. to tell her that a meeting had been arranged in McCallie's office at 10:30 that morning. The meeting was held, with plaintiff, McCallie, Popkin and Salsich in attendance. From the outset, plaintiff was uncooperative. Although McCallie and Salsich appeared to desire a resolution that would enable plaintiff to resume his student teaching, plaintiff made no effort to effect such a solution. Plaintiff at first attempted to write out verbatim all that was being said. Finally, a tape recorder was obtained. Although asked to tell his version of the incidents of the preceding week, plaintiff responded only with questions, asking "what do we share?" and asking for standards by which to be judged and the presence of students. Eventually, Mr. Salsich left the meeting to return to his classes. Plaintiff did not feel that the conference should continue without Salsich's presence. McCallie, however, noted that he had the responsibility of determining whether plaintiff could resume student teaching in the school and would not permit the same until plaintiff had responded to some of the questions. Although McCallie continued to seek plaintiff's version of the incidents, plaintiff persisted in his refusal to provide any answers. Finally, after almost two hours, McCallie ended the meeting and advised plaintiff that he could not return to the high school until he had met with officials of the University of Missouri-St. Louis and had another conference with McCallie. McCallie and Popkin stood up to leave; plaintiff remained seated. Finally, plaintiff stood up. McCallie told plaintiff that *571 they would go to Mr. Salsich's room and get plaintiff's books. Mrs. Popkin left the high school as McCallie and plaintiff proceeded to Salsich's room. They entered the room, and plaintiff went to the bookshelf to obtain his books. McCallie whispered to Salsich that plaintiff had been asked to leave the building. At this point, plaintiff turned around and asked various class members if they had heard what McCallie had said. Upon leaving Salsich's room, plaintiff sought to return to McCallie's office to make a list of the books plaintiff had taken. McCallie repeated that plaintiff was to leave the building. As the two walked down the hallway, plaintiff would stop and introduce himself to students walking by. When McCallie finally got plaintiff to the school's door, he told plaintiff that he could not return to the school as a student teacher and that there would be no further meetings. That afternoon, McCallie contacted Michele McGrath and informed her of his decision not to permit plaintiff to return as a student teacher. On that same day, Mrs. Popkin wrote a note to Dean Olsen advising him as follows:
I have just returned from U. City where I participated in a conference with our student teacher, John Aubuchon, his cooperating teacher, Al Salsich and Franklin McCallie, the Vice-Principal. John has been asked to leave U. City because of his unusual  bizarre  behavior in Al's classroom last week. In today's conference, he was extremely uncooperative and difficult to talk to. His behavior was so strange that I believe, reluctantly, that there may be some emotional illness involved. The Vice-Principal, Mr. McCallie, was forced to conclude that nothing had been accomplished in this conference except to reinforce the conclusion which Al Salsich had already drawn. Naturally, I had hoped for a happier conclusion.
Although this note is apparently part of plaintiff's student file, the record failed to indicate that the contents of the note had been, or ever would be, revealed.
5. On November 2, 1976, after the class period in English 262, Mrs. Popkin asked to talk to plaintiff. Plaintiff requested that another student stay and listen to what was being said. Mrs. Popkin told plaintiff that the high school would not permit him to return as a student teacher and suggested that plaintiff contact the student counseling service.
6. On November 4, 1976, after returning from a trip, Dean Olsen received Mrs. Popkin's note. He met with Mrs. Popkin and Ms. McGrath and was advised of the details. Dean Olsen asked Mrs. Popkin to outline the deficiencies that she and Mr. Salsich had noted in plaintiff's student teaching. Dean Olsen summarized the deficiencies from the information received and based his decision thereon. Included were: (1) difficulty in hearing and accepting criticism; (2) difficulty in focusing on day-to-day matters of students' learning and details of teaching, preferring instead to philosophize; (3) failure to follow written lesson plans and frequent straying from assigned topics; (4) failure to detect and correct grammatical errors; (5) tendency to overidentify with the students; and (6) failure to answer direct questions and enter into a dialogue about his progress and problems. Dean Olsen requested that plaintiff voluntarily withdraw from the student teaching course; if plaintiff were to fail to do so, an administrative drop would be recorded. Plaintiff was orally advised of this decision by Mrs. Popkin following Education 262 on November 4, 1976. Plaintiff, on Mrs. Popkin's advice, went to see Dean Olsen on November 5, 1976; plaintiff, however, wanted to have his attorney present as a condition precedent to discussion. Dean Olsen refused, basing the decision on the fact that it was an academic, and not a disciplinary, matter. Dean Olsen subsequently conferred with counsel for the University and was advised that the attorney could be present as long as Dean Olsen specified that the matter was an academic one.
7. On November 17, 1976, plaintiff received a letter from Dean Olsen advising that plaintiff had been administratively dropped from Education 271 and that he could apply for readmission to the student teaching course in the fall of 1977 subject to the following:

*572 The one stipulation is that during the interim period you have a successful work experience in which you are responsible for dealing with people on a sustained basis.
This letter further advised that Dean Olsen would be willing to meet with plaintiff and his attorney; plaintiff, however, never arranged for such a meeting.
8. After this letter had been received, plaintiff's father contacted Dean Olsen. Dean Olsen advised him that plaintiff lacked leadership. Dean Olsen further advised that Mrs. Popkin felt that plaintiff had psychological problems.
9. The evidence fails to establish that there was or would be any disclosure from plaintiff's student record of Mrs. Popkin's November 1, 1976 note to Dean Olsen. Furthermore, the Court finds that Dean Olsen's decision was not based upon Mrs. Popkin's opinion as to plaintiff's psychological well-being. Instead, the Court finds that the decision was based upon plaintiff's areas of deficiency as related to Dean Olsen by Mrs. Popkin, and as set forth in Dean Olsen's memorandum of November 16, 1976. The Court further finds that the decision was not arbitrary nor reached in bad faith.
10. On May 15, 1977, plaintiff graduated from the University of Missouri-St. Louis with a Bachelor of Arts degree in English.
11. Plaintiff's future applications for a teaching certificate would require him to disclose that he had been administratively dropped from the student teaching course. The record fails to establish that such disclosure would preclude plaintiff from obtaining a certificate.

CONCLUSIONS OF LAW
This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 28 U.S.C. § 1343.
In Board of Curators v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the Court held that due process did not require a hearing where a student was dismissed from medical school on academic grounds. The fact that the basis for the determination was the student's clinical ability did not change the nature of the dismissal from an academic to a disciplinary one. Id. 435 U.S. at 87, 98 S.Ct. 948. Thus, the law is now clear that absent a stigma to plaintiff's good name or reputation, Greenhill v. Bailey, 519 F.2d 5 (8th Cir. 1975), a decision to dismiss a student for failure to attain academic standards will not be disturbed by the courts unless there is evidence of bad faith or arbitrary action. Gaspar v. Bruton, 513 F.2d 843 (10th Cir. 1975). See also Connelly v. University of Vermont and State Agr. Col., 244 F.Supp. 156 (D.Vt. 1965).
Plaintiff stresses Mrs. Popkin's note of November 1, 1976, which opines that plaintiff is in need of psychological help. Plaintiff claims the same to be a stigma imposed upon him. The note, however, was not the basis of Dean Olsen's decision; no mention was made by Dean Olsen of Mrs. Popkin's supposition in his decision to have plaintiff withdraw or dropped from the course. Moreover, there is no evidence that the note would be revealed to other schools to which plaintiff might seek admission, or would in any way be made part of the explanation of why plaintiff was administratively dropped from the course. Compare, Greenhill v. Bailey, supra; cf., Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).
Plaintiff also contends that the decision was arbitrary and in bad faith. The Court disagrees. It was based upon the criticisms of plaintiff's cooperating teacher, Mr. Salsich, and his University supervisor, Mrs. Popkin. The Vice-Principal of the co-operating high school had determined that plaintiff's behavior and attitude were such that he would no longer be permitted to student teach in the school. The facts adduced herein clearly support the areas of deficiency noted by Dean Olsen. Under such circumstances, the Court can not conclude that the decision was made arbitrarily or in bad faith.
Assuming arguendo that plaintiff was entitled to a hearing, the Court concludes *573 that the meeting held in Mr. McCallie's office on November 1, 1976 was all that due process required herein. Cf., Navato v. Sletten, 560 F.2d 340 (8th Cir. 1977). Plaintiff had been advised that his behavior of the prior week would be discussed, and indeed, that was the sole topic of discussion. Plaintiff was given repeated opportunities to present his version of the incidents and rebut the statements of Mr. Salsich; plaintiff refused to do so. The meeting was attended by both plaintiff's supervisor and cooperating teacher. Under such circumstances, the Court can not conclude that plaintiff's constitutional rights were violated. Cf., Local 130, International Union of Electrical, Radio and Machine Workers, AFL-CIO v. McCulloch, 120 U.S.App.D.C. 196, 200, 345 F.2d 90, 94 (1965).
Accordingly, judgment will be entered in defendants' favor.