## NATIONAL LABOR RELATIONS BOARD v. O'KEEFE & MERRITT MFG. CO. et al.

### No. 11919.

United States Court of Appeals
Ninth Circuit.

Dec. 2, 1949.

David P. Findling, Associate General Counsel, A. Norman Somers, Assistant Gen. Counsel, Fannie M. Boyls and Bernard Dunau, Attorneys, N.L.R.B., Washington, D. C., for petitioner.

Cecil W. Collins, Los Angeles, Cal., for respondents.

Arthur J. Goldberg, Frank Donner and Thomas E. Harris, Washington, D. C., for intervenors.

Before HEALY and GOODRICH, Circuit Judges, and GOODMAN, District Judge.

GOODRICH, Circuit Judge.

This is a petition in the usual form for the enforcement of an order of the National Labor Relations Board. It presents several questions. The facts concerning each one will be stated in connection with the discussion of the individual question.[1]

1. Are the Respondents All Before the Court and the Board?

No objection is made with regard to jurisdiction over the corporate respondent. Objection to the Board's jurisdiction over some of the individuals who compose the partnership respondent has, however, been

---

1. As originally submitted, the case presented the problem of the effect of non-compliance with the requirement of filing anti-communist affidavits prescribed by the Labor Management Relations Act of 1947, 29 U.S.C.A. § 159(h). This problem has now disappeared since the union has filed the required affidavits. Certain conditions which the Board put in its order and which met with objection from respondents need not be considered because they are now removed from the case by the changed circumstances. We proceed, therefore, to the questions presented in the arguments for and against the enforcement order.

made and persisted in. The argument is advanced that one or some of the individual partners were never adequately served with process sufficient to bring them before the Board.

■ The answer to this contention we think is easy in the light of well settled rules of law. It is undisputed that the individuals were served with notice by a registered letter addressed to each one of them. This service was in accordance with the statute and the Board's rules pursuant thereto.[2] This is a form of notice reasonably calculated to give a defendant knowledge of proceedings and an opportunity to be heard. As such it satisfies the requirement of due process.[3] Since the statutory rules have been followed and they are in accordance with what due process requires, the objections made are without merit. This is sufficient to dispose of the point without going into supporting arguments with regard to the general appearance by counsel for all the respondent parties, the personal appearance at the hearing of some of them and the like. All were before the Board and before this Court and are bound by whatever enforcement decree is entered.

2. Was There Sufficient Evidence of Unfair Labor Practices?

■ Although the respondents attack the affirmative answer given by the Board to the above question there is ample evidence to sustain the findings of a violation of Sections 8(a) (1) and 8(a) (5)[4] of the statute by the corporate respondent. The responsibility of the partnership and the individual members thereof will be considered later. The evidence shows express preference on the part of management for an A. F. of L. over a C. I. O. union as a bargaining agent, if union there had to be. The president of the company frankly said that he would prefer no union at all, but with equal frankness expressed his preference for the A. F. of L. as the lesser of two evils. This expression of opinion is

not, as will be seen below, an unfair labor practice. But in addition to mere talk, the A. F. of L. was given, on company pay and on company time and on company property, two rank and file employees to work on behalf of the A. F. of L. campaign. A pro-A. F. of L. meeting was permitted on company time and property prior to the election. The same sort of assistance, except in a greater degree, was given the A. F. of L. following the election which the C. I. O. won. This will be outlined in greater detail in connection with post-election events. No purpose would be served in further detailing the pre-election activities. It is sufficient that we find substantial evidence to support the Board's conclusion.

3. Were Speeches Made by the Corporation's President Sufficient to Constitute an Unfair Labor Practice?

■ The Board has found, and in argument upon its position, stoutly maintains that speeches made by Mr. O'Keefe, the corporation president, constituted in themselves violations of the statute. To support this conclusion the Board cites a great many decisions, but we think that in their citation that body is carrying over conclusions which courts reached under the National Labor Relations Act of 1935, 29 U.S.C. §§ 151–166 (1946), prior to its modification by the Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 141–197. The present language, 29 U.S.C.A. § 158 (c), provides: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

Mr. O'Keefe, president of the corporation, made a speech to the employees prior to the election. The entire speech appears in the record and we have read it. He said

2. 29 U.S.C.A. § 161(4); N. L. R. B. Rules and Regulations, Series 5, Sub-part G, 29 C.F.R. 4377 (1947 Supp.).

3. Restatement, Conflict of Laws § 75; Restatement, Judgments § 6.

4. 29 U.S.C.A. § 158(a) (1, 5).

that he felt all unions were evils. He said that the "question for you to decide is which of the two * * * evils is the lesser. * * *" That he expressed preference for the A. F. of L. over the C. I. O. there is no doubt. But we do not find in anything he said any coercion or threat of reprisal. Neither did the employees, for in spite of the president's speech the C. I. O. won the election by a substantial majority.

President O'Keefe made another speech following the election. He did not attempt to conceal his disappointment at the outcome. He pointed out the difficulty which his company was in when it tried to sell gas heaters, stoves and other household appliances which were to be installed by union men, practically all of whom had an A. F. of L. affiliation. He quoted his production manager who thought that to try to sell these articles under such circumstances would be a great deal like trying to sell refrigerators to Eskimos.

We realize that words are not to be looked at in a vacuum, but in the light of all the circumstances surrounding their utterance. Even so, we do not find in the words used here anything which can be construed as coercive. That being so, it is our responsibility to say, as we do, that the finding of coercion through the speeches is not based upon substantial evidence. Therefore, enforcement of that portion of the order enjoining violations of which there is no substantial evidence will be refused.[5]

4. Are All the Respondents Subject to the Order?

■ In order to present this question a fuller statement of facts is required. The corporate respondent has been doing business since about 1920 and up to the period of the war was engaged in the manufacture of gas stoves, heaters and other household appliances. During the war it went into specialized war work. In 1942, in order to facilitate the conduct of its war production business, the persons having the controlling interest in the corporation organized the partnership, Pioneer Electric Company. The purpose of organizing the partnership was legitimate so far as we know and there is no suggestion that it had anything to do with labor relations. The partnership and the corporation occupied the same physical premises and the partners were all, at the beginning, individual shareholders of the corporation. The corporation was still in existence, although with a very few employees, at the time of all the happenings out of which this litigation arises.

Following the election which was such a disappointment to management, an agreement was made between the corporation and the partnership whereby the latter was to take over the manufacturing business for the corporation. The two still occupied the same real estate. The partnership took over the corporation's production employees, leaving the corporation with but an office staff and auxiliary functions. Utilities expenses, payment of taxes and insurance on the premises and equipment were all to be borne by the corporation. Materials and equipment for manufacturing were to be furnished by the corporation and sold by it. The partnership could not manufacture or sell products on its own account without the corporation's consent. The partnership was to be paid for its services by the cost of labor plus two and one-half percent.

Ownership of shares in the corporation was divided among members of the O'Keefe, Merritt and Boyle families. Each family group owned one-third of the shares. The proportions were the same in the partnership except that Mr. Durant, the erstwhile chief engineer for the corporation, came into the partnership with a twenty-five percent interest so that the three individual family groups and Mr. Durant each held twenty-five percent.

Following the election there were meetings between Mr. Collins, the attorney and labor relations officer for the corporation,

5. N. L. R. B. v. Crompton-Highland Mills, Inc., 1949, 337 U.S. 217, 69 S.Ct. 960; N. L. R. B. v. Stowe Spinning Co., 1949, 336 U.S. 226, 69 S.Ct. 541; N. L. R. B. v. Express Publishing Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

and the C. I. O. bargaining committee. These meetings resulted in no contract. The charge is made that they were not conducted as good faith bargaining. On two occasions A. F. of L. committees came to the bargaining conferences. There is evidence that Mr. Collins procrastinated with regard to examination of proposals made by C. I. O. representatives and the conclusion is undisputed that after the proposals were put in writing to him he did not follow up the agreement made as to counter-proposals by him. While all this was going on, arrangements for a transfer of the manufacturing end of the business to the partnership were completed and the transfer was announced to the production employees on February 1, 1946. Mr. O'Keefe told them of the change in management. He told them of a new scale of pay, increasing their wages. He also said that employees who remained another thirty days under the new arrangement would have the increased pay retroactive to January 1. One day before the announcement, there had been entered into, without any election, a closed shop contract with the A. F. of L., covering the partnership employees.

The combination of facts just recited fits into a legal pattern already well marked out by an abundance of authority in the labor law field. Undoubtedly the group succeeding to the manufacturing business of O'Keefe and Merritt Manufacturing Company, is responsible, just as fully as that corporation, for its unfair labor practices. The decisions have gone much further in putting the responsibility on the successor than the facts of this interesting case require us to go. Indeed, the Board could hardly fail to draw the conclusion of continuity of policy when one sees the progress of negotiations which got nowhere with the C. I. O. representatives after several weeks and were con-

cluded so happily and promptly with A. F. of L. representatives almost as fast as a contract could be written. The facts thus bring the case clearly within the doctrine already laid down by both the Courts of Appeal and the Supreme Court.[6]

 Upon the facts stated by it, the company undoubtedly had an economic motive in wishing to do business with the A. F. of L. rather than the C. I. O. It was confronted, no doubt, with a difficult business problem. It would be hard to sell goods manufactured by a union for households if the workers who install such articles will not handle them if manufactured by a rival labor organization. But, as has more than once been said, relief for a violation of the labor relations law can not be withheld because of economic pressure or pinch upon an employer by a labor union engaged in a jurisdictional labor dispute.[7]

The petition for enforcement will be granted, but with modifications in accordance with this opinion. The Board may submit an amended decree.

---

6. Southport Petroleum Co. v. N. L. R. B., 1942, 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718; N. L. R. B. v. Condenser Corp. of America, 3 Cir., 1942, 128 F.2d 67; N. L. R. B. v. Colten, 6 Cir., 1939, 105 F.2d 179; cf. Regal Knitwear Co. v. N. L. R. B., 1945, 324 U.S. 9, 65 S.Ct.

478, 89 L.Ed. 661; Walling v. James V. Reuter, Inc., 1944, 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001.

7. N. L. R. B. v. N. B. C., 2 Cir., 1945, 150 F.2d 895; N. L. R. B. v. Star Publishing Co., 9 Cir., 1938, 97 F.2d 465.