**Clifford W. POTTER, Regional Director, Twenty-Third Region, National Labor Relations Board, Appellant,**

v.

**CASTLE CONSTRUCTION COMPANY, d/b/a Baker Homes of San Antonio, Appellee.**

No. 22544.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1966.

Rehearing Denied Feb. 3, 1966.

---

Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael M. Sohn, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Gary Green, Atty., N. L. R. B., for appellant.

James G. Murry, San Antonio, Tex., for appellee.

Before RIVES, WISDOM and GEWIN, Circuit Judges.

RIVES, Circuit Judge:

The district court granted a preliminary injunction to prevent the counting of certain ballots cast in a representation election conducted by the National Labor Relations Board [1] pursuant to sections 9 and 3(b) of the National Labor Relations Act, 61 Stat. 136, 73 Stat. 519, 29 U.S. C.A. § 151 et seq. This appeal followed.

On June 25, 1964, the United Stone and Allied Products Workers of America, AFL–CIO,[2] filed a petition requesting a

---

1. Hereafter the Board.

2. Hereafter the Union.

representation election among the production and maintenance employees of George C. Vaughan & Sons, Inc.[3] A stipulation conference was held by the Board on July 9, 1964 between the Union and Vaughan. The unit stipulated was:

"All production and maintenance employees including truck drivers, shipping and receiving employees employed at the San Antonio, Texas, plant; excluding all office clerical employees, professional employees, draftsmen, guards and watchmen, salesmen and supervisors as defined in the Act."

Thereafter, on July 31, 1964 the election was held. Vaughan challenged the ballots of 24 employees on the ground that they were cast by employees of a separate employer, Baker Homes of San Antonio.[4] Of the unchallenged ballots, 82 were cast in favor of the Union and 67 against it. The Board ordered a hearing to determine the merits of Vaughan's challenge, because the 24 affected ballots could alter the outcome of the election.

At that hearing the Board for the first time discovered the existence of Baker and its interrelationship with Vaughan. The hearing officer issued his report recommending that Vaughan's objections be overruled and that the challenged ballots cast by employees of Baker be counted. The hearing officer found that Vaughan and Baker are a single employer and were both covered by the July 9 stipulation.

The facts elicited at the hearing indicate that Baker was but an elusive shadow of Vaughan. Vaughan is a wholesale distributor and manufacturer of building materials. It established Baker as a separate corporation to act as a labor supply contractor to its San Antonio plant for

valid corporate reasons, not material here. Both corporations are physically located in the same building. No partitions, signs or entryways separate the two companies and the building used by both gives no evidence of Baker's separate existence. Baker is a wholly-owned subsidiary of Vaughan and all of its officers are either officers or employees of Vaughan. Internal correspondence of Vaughan refers to Baker as a division and not a separate corporation. In the past, employees of Vaughan and Baker have been interchanged.

The president of Vaughan in conducting the employer's election campaign directed it at employees of Baker as well as employees of Vaughan. A Baker's supervisor had promised to take Baker employees to the election.[5] The Board found as follows:

"We find that Geo. C. Vaughan & Co. and Baker Homes constitute a single employer. In view of our finding, we find no merit in the Employer's argument that Baker Homes was not separately represented at any of the proceedings discussed herein.

\*  \*  \*  \*  \*  \*

"We agree with the hearing officer's recommendation, but in doing so rely particularly on the following factors: (1) Vaughan treated Baker Homes merely as a division of its San Antonio operations, (2) Vaughan's election campaign was directed at Baker Homes employees, as well as other employees of Vaughan, and (3) on the day before the election, a Baker Homes supervisor told an employee that he would take the Baker Homes' employees to the election.

---

3.  Hereafter Vaughan.

4.  Hereafter Baker.

5.  Neither party disputes the proposition that the Board before an election can find two corporations are affiliated business enterprises with common ownership, control and labor policy and constitute a single integrated business enterprise. Had the Board so found in this case, it could have ordered an election for both

corporations and its factual finding would not have been subject to collateral attack in the district court. Instead, it appears that Baker charges that it did not participate in the election and that the Board had no power after the election was over to retroactively make it a party. It would be patently absurd for Baker to claim that it participated but because of lack of formal notice the election is void.

"Upon these considerations, we find it reasonable to infer that the parties intended to include and did include Baker Homes employees in the stipulated unit."

Vaughan having failed to achieve its objective before the Board, Baker then instituted suit in the district court. Baker asked that the court under its equity powers enjoin the counting of Baker employees' ballots. It was alleged that Baker was not covered by the stipulation agreement and had no notice of any of the proceedings. For the Board, after the election, to include Baker within the bargaining unit, argued Baker, would violate due process and the notice provision of the Act. Section 9(c), 29 U.S.C.A. § 159(c) (1). Of course, irreparable harm and injury was alleged.

In its order granting a preliminary injunction and rejecting the Board's motion to dismiss for lack of jurisdiction, the district court stated as follows:

"And it appearing to the satisfaction of the Court and the Court finding that no notice of any kind *was ever served* upon Castle Construction Company, d/b/a Baker Homes of San Antonio in Case No. 23–RC–2270, as required by law, and that the failure of Defendant to serve any notice upon said Complainant was in violation of the due process requirements of the Fifth Amendment of the Constitution of the United States of America and in violation of the National Labor Relations Act, 29 USCA, Section 159(c) (1) * * *." (Emphasis added.)

Whether Baker received adequate notice in this case is primarily a question of fact. If adequate notice was given, then no violation of due process or the notice provisions of the statute is possible. The Board found that Baker was an active participant in the election and was included in the stipulation. Implicit within these findings is the conclusion that Baker in fact had adequate notice. If we were called upon to reach the question of notice, we would have to conclude that the district court erred.

We think the law is clear that the statute does not require stringent adherence to form or technical application of the notice requirement. The notice requirement of the Act is fulfilled where notice is "actually received and brought to the attention and active consideration of those in responsible direction" of the corporation's business affairs. NLRB v. McGahey, 233 F.2d 406, at 408–409 (5 Cir. 1956); accord, NLRB v. Deena Artware, 310 F.2d 470, at 473–474 (6 Cir. 1962). Cf. NLRB v. Deena Artware, 361 U.S. 398, at 402, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960). The purpose of notice in the instant case would have been to allow Baker to participate in the election and any necessary Board proceedings. "When that aim is satisfied in substantial fact, a technical procedural imperfection will not invalidate the whole proceeding." NLRB v. McGahey, supra.

The Supreme Court phrased the bounds of due process under the Fifth Amendment in Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, at 314–315, 70 S.Ct. 652, at 657, 94 L.Ed. 865 (1950) as follows:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied."

Therefore, it is evident that the instant case presents no novel question of constitutional importance. It does not present even the normal mixed question of fact and law, since what constitutes proper notice is already adequately settled. The crucial issue here is one of policy; whether a question presented as this question is should be treated as a question of law or fact.

■ We hold that the predominant policy prescribed by Congress in the National Labor Relations Act requires us to treat this question as one of fact, committed for its primary determination to the Board with the subsequent review procedures provided by the Act. Normally, the Board's determinations and orders entered in certification proceedings under section 9(c) are not directly reviewable in the federal courts. Such factual determinations and orders are reviewable only after the dispute concerning their correctness culminates in a finding by the Board that an unfair labor practice has been committed; for example, where an employer refuses to bargain with a certified representative, arguing that the election was held in an improper manner.

■ In the instant case, Vaughan could refuse to bargain for Baker's employees and thus eventually test the validity of the election both for itself and Baker. However, Baker argues that it has no way to directly test the election for itself. We think this argument is answered both by the Board's findings and by the Board's regulations. Under section 102.65(b) [6] of the Board's regulations, any interested party may move to intervene in the Board's proceedings. Baker could have intervened at any stage of the proceedings. Certainly after the ballots were cast Baker knew its interests might be affected by the Board's actions. Having failed to avail itself of its rights under the regulations and statute, Baker is in no position to complain now. Nothing in the statute gives a choice of forum to the employer affected. To allow a collateral attack on the Board's order, because Baker did not choose to present its arguments to the Board on its own behalf, would be to engraft a choice of forums provision into the statute. The Board wisely promulgated section 102.65 (b) to prevent just such problems.[7]

Where an employer refuses to bargain because he believes the election was improper, Congress has provided by section 9(d), 29 U.S.C.A. § 159(d), for a full judicial review by the Court of Appeals of the underlying certification order.[8] This method of review imposes significant delays upon an employer's attempt to challenge the validity of the Board's determinations and orders in certification proceedings. But it is abundantly clear that Congress specifically intended to cast the burden occasioned by these delays on the employer, as opposed to mak-

6. Section 102.65(b) of the Rules and Regulations of the National Labor Relations Board, Series 8, as amended, revised January 1, 1965, provides: "Any person desiring to intervene in any proceeding shall make a motion for intervention, stating the grounds upon which such person claims to have an interest in the proceedings. The regional director or the hearing officer, as the case may be, may by order permit intervention in person or by counsel or by other representative to such extent and upon such terms as he may deem proper, and such intervenor shall thereupon become a party to the proceeding." Compare the liberal treatment accorded motions of intervention at the appellate court level on the review of decisions by the National Labor Relations Board International Union, United Automobile, etc., Workers v. Scofield, 86 S.Ct. 373, decided Dec. 7, 1965.

7. The contentions that Baker would have presented had it been before the Board were presented by Vaughan and have been carefully dealt with by the Board.

8. "Section 9(d) makes it absolutely clear that there shall be no right to court review anterior to the holding of an election. An election is the mere determination of a preliminary fact, and in itself has no substantial effect upon the rights of either employers or employees. There is no more reason for court review prior to an election than for court review prior to a hearing. But if subsequently the Board makes an order predicated upon the election, such as an order to bargain collectively with elected representatives, then the entire election procedure becomes part of the record upon which the order of the Board is based, and is fully reviewable by any aggrieved party in the Federal courts in the manner provided in section 10. And this review would include within its scope the action of the Board in determining the appropriate unit for purposes of the election. This provides a complete guarantee against arbitrary action by the Board." S.Rep. No. 573, 74th Cong., 1st Sess., 14.

ing the Union await recognition until the termination of a collateral attack in the judicial system. Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed. 2d 849 (1964). The Supreme Court has consistently refused to allow either direct review of certification proceedings in the Courts of Appeals or collateral attacks in the district courts. On only two occasions has the Supreme Court engrafted exceptions to the collateral attack principle.

The first exception was enunciated in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In that case the Court was faced with a pure question of law. The statute clearly forbade the inclusion of professional employees with nonprofessional employees in the same unit unless the professional employees were polled and consented. The Board omitted this procedure and acted outside the scope of its statutory authority "and contrary to a specific prohibition in the Act." Leedom v. Kyne, 358 U.S. 184, at 188, 79 S.Ct. 180, at 184 (1958). No application of the fact-finding process could save the Board. We attach great significance to the fact that the Act specifically forbade the Board's action. The normal, mixed question of law and fact would be one that approaches our situation in the instant case. The Board makes some fact determinations and some question remains as to whether due process has been definitely satisfied. We do not believe the Supreme Court intended to expose all these normal, mixed questions to the collateral attack procedure. Cf. Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

The second exception was enunciated in McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). In that case the Court faced questions involving the foreign relations of the United States. The judicial system has always placed in a special category problems involving the coordinate

branches of our Government and their effect on foreign relations. Cf. Chicago & S. Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948). The McCulloch exception does not apply to "a purely domestic adversary situation," as we have in the instant case. Boire v. Greyhound Corp., 376 U.S. 473, at 480–481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).[9]

The Supreme Court explained the principles applicable in the instant case as follows (Boire, supra, at 481–482, 84 S.Ct. at 899):

"[W]hether Greyhound possessed sufficient indicia of control to be an 'employer' is essentially a factual issue, unlike the question in Kyne, which depended solely upon construction of the statute. The Kyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the Act."

In the instant case, whether the proper bounds of the statute and due process were observed is *primarily a fact question*. To the extent that questions of law are involved, we think that the policy prescribed by Congress commits to the Board their primary consideration and decision. Cf. Boire v. Miami Herald Publishing Co., 343 F.2d 17 (5 Cir. 1965). If the question is ever to reach the courts, it should be through the adequate procedure adopted by Congress which places the burden of delay on the employer. We, therefore, hold that the district court should have dismissed the complaint. The judgment is reversed

---

9. The Supreme Court "characterized" each of these two exceptions as involving "extraordinary circumstances." Boire v. Greyhound Corp., 376 U.S. 473, at 479, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

and the case remanded with directions that the district court dismiss the complaint.

Reversed and remanded with directions.