**INTERNATIONAL ASSOCIATION OF TOOL CRAFTSMEN AND ITS LOCAL NO. 20**

v.

**Edward B. MILLER, Chairman, et al.**

**Civ. No. 3–74–166.**

United States District Court,
E. D. Tennessee, N. D.

Sept. 18, 1974.

Lewis R. Hagood, Knoxville, Tenn., John S. McLellan, Jr., Kingsport, Tenn., for plaintiff.

Abigail Cooley, Asst. Gen. Counsel for Sp. Litigation, Washington, D. C., for defendants.

## MEMORANDUM

TAYLOR District Judge.

This action is before the Court on a complaint filed by plaintiff against the National Labor Relations Board [the "Board"] seeking a declaratory judgment decreeing the Board's order in this case null and void in violation of Section 9(b)(2) of the National Labor Relations Act, and also seeking a mandatory injunction compelling the Board to conduct an election. Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction under Rule 12 (b)(1), F.R.Civ.P.

The material facts in this case may be summarized as follows: Union Carbide Corporation, Nuclear Division, operates the K–25 Gaseous Diffusion Plant at Oak Ridge, Tennessee. There are 1040 hourly employees at this plant and these employees have been represented in a production and maintenance unit by the Oil, Chemical, and Atomic Workers International Union and its Local 3–288 ["OCAW"] since 1946, when OCAW was first certified by the Board.

On July 26, 1972, plaintiff filed a representation petition with the Board seeking an election among the ninety-three machinists and instrument makers employed in the machine shop at the K–25 plant. After an administrative hearing, the Board dismissed the petition on August 27, 1973 (205 NLRB 126—Exhibit A to the Complaint). A motion for reconsideration was denied October 19, 1973 and this action was filed on June 11, 1974.

The ninety-three employees in the proposed unit consist of ninety-one first-class machinists and two instrument makers. All of the employees in the proposed unit work in either the main machine shop (forty machinists and one instrument maker) or in the jig and fixture machine shop (fifty-one machinists and one instrument maker). The machinists and instrument workers are skilled craftsmen and are the highest paid workers among the present unit members. Plaintiff petitioned the Board in order to provide separate representation for these ninety-three employees.

The sole issue that this Court must now consider is whether on the facts of the instant case the Court has jurisdiction to hear this action. The general rule is that a Federal District Court lacks jurisdiction to hear a challenge to Board actions in representation proceedings.[1] Plaintiff asserts that the Court has jurisdiction in the instant case because the Board acted in direct contravention of Section 9(b)(2) of the Act [Title 29 U.S.C. § 159(b)(2)] in dismissing plaintiff's petition for a separate craft unit. Also, in oral argument on the motion to dismiss, plaintiff contended that the Board's action denied it due process of law under the Federal

---

1. There are three generally recognized exceptions wherein such collateral attacks are allowed: (1) where plaintiff makes a nonfrivolous assertion that the Board has deprived it of constitutional rights; (2) where the Board has acted in direct contravention of a specific statutory standard; (3) where swift judicial resolution is necessary to avoid international complications. Annot., 2 A.L.R. Fed. 376, 390 (1969).

Constitution. Therefore, plaintiff has asserted as a basis for subject matter jurisdiction two of the three possible exceptions to the general rule of non-reviewability.

 Considering first plaintiff's assertion that the Board acted in direct contravention of Section 9(b)(2) in dismissing its petition, the Court notes that the burden placed on plaintiff is to show that the Board attempted to exercise a power which Congress had specifically withheld or which was in direct contravention of a specific prohibition of the Act. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). As the Court of Appeals for the Sixth Circuit has stated: "a merely erroneous or arbitrary exertion of authority by the Board will not ordinarily justify injunctive intervention . . . but Leedom v. Kyne indicates that the District Court at least had jurisdiction to determine if the contested Board action was plainly beyond the bounds of the Act, or clearly in defiance of it." Modern Plastics Corporation v. McCulloch, 400 F.2d 14, 17 (6th Cir. 1968).

In this case, the Board allegedly violated Section 9(b)(2) of the Act which provides:

"The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act . . . ., the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, that the Board shall not . . . (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation . . . ." Title 29 U.S.C. § 159(b)(2)

Plaintiff's position is that the Board dismissed its petition for separate representation solely on the ground that the OCAW had been established by the Board previously as the proper collective bargaining unit, and that this was in direct contravention of the statutory mandate that a majority of the workers in the proposed craft unit should be allowed to vote for or against such severance. Chairman Miller and Member Fanning were apparently of the same opinion in their dissent.

"Our colleagues have taken what appears to us to be a near perfect example for craft severance and dismissed the petition under the *Mallinckrodt* [2] criteria. In our view the long-established bargaining history at this plant is alone being relied on to deny a severance election. Thus in our opinion this result runs directly contrary to the statutory provision concerning craft units." 205 NLRB No. 126, p. 11 (dissenting opinion)

██ Defendants' position is that the Board has not acted in direct contravention of Section 9(b)(2) in that the prior bargaining history of the plant under the prior Board certification of OCAW was but one of the relevant factors the Board considered in exercising its discretion in establishing collective bargaining units. Defendants further assert that Section 9(b)(2) was designed to be a very narrow limitation upon the Board's discretion in representation determinations in that the Board cannot foreclose future consideration of a craft unit *solely* on the ground that the Board had previously concluded that a larger unit was appropriate. The Court is of the opinion that this is a correct statement of the law. See Teamsters, Local 690 v. NLRB, 375 F.2d 966, 973–74 (9th Cir. 1967); NLRB v. Pittsburgh Plate Glass Co., 270 F.2d 167, 172–73 (4th Cir. 1959), cert. den. 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960); Mueller Brass Co. v. NLRB, 86 U.S.App.D.C. 153, 180 F.2d 402, 404–405 (1950).

██ The standards which the Board applies in craft severance cases are set

---

2. Discussed *infra* at p. 1082.

forth in In Re Mallinckrodt Chemical Works, Uranium Division, 162 NLRB 387 (1966),[3] and the majority of the Board in the instant case applied the facts of this case to the *Mallinckrodt* criteria. These criteria are as follows:

"1. Whether or not the proposed unit consists of a distinct and homogeneous group of skilled journeymen craftsmen performing the functions of their craft on a nonrepetitive basis, or of employees constituting a functionally distinct department working in trades or occupations for which a tradition of separate representation exists.

"2. The history of collective bargaining of the employees sought and at the plant involved, and at other plants of the employer, with emphasis on whether the existing patterns of bargaining are productive of stability in labor relations, and whether such stability will be unduly disrupted by the destruction of the existing patterns of representation.

"3. The extent to which the employees in the proposed unit have established and maintained their separate identity during the period of inclusion in a broader unit, and the extent of their participation or lack of participation in the establishment and maintenance of the existing pattern of representation and the prior opportunities, if any, afforded them to obtain separate representation.

"4. The history and pattern of collective bargaining in the industry involved.

"5. The degree of integration of the employer's production processes, including the extent to which the continued normal of the production processes is dependent upon the performance of the assigned functions of the employees in the proposed unit.

"6. The qualifications of the union seeking to 'carve out' a separate unit, including that union's experience in representing employees like those involved in the severance action." 162 NLRB at 397. [As stated at p. 12 of Defendants' Memorandum in Support of Motion to Dismiss)

A review of the Board's decision convinces the Court that the Board did not reject the proposed craft unit solely on the basis of a prior unit determination. Rather, the Board performed an extensive analysis of the relationship of the employees in the proposed craft to the other unit employees and found that although there were certain indications that the proposed craft unit had established a separate identity, ". . . the machinists and instrument makers share a natural community of interest with the other employees in the unit." (Complaint, Exhibit A, p. 7)

The issue before this Court is not whether there was evidence to support this finding, nor whether the Board acted erroneously. Rather, the question is whether the Board in reaching its decision violated Section 9(b)(2). There is no doubt that the Board considered factors other than a prior unit determination in reaching its decision. For example, the Board found that (1) all the employees have similar working conditions and enjoy the same benefits, (2) the training program provided a community of interest to the unit as a whole, (3) the machinists and instrument makers have participated in OCAW's activities and grievance procedures, and (4) machinists and instrument makers are represented in production and maintenance units, rather than separate units, in the only other two gaseous diffusion plants in the country.

█ The foregoing findings show that the Board did not rely solely on the

---

3. Plaintiff contends in its complaint that the Board violated the rule-making procedures in the Administrative Procedure Act, Title 5 U.S.C. § 701 et seq., in setting forth the "*Mallinckrodt* criteria" for craft severance cases. However the law is clear that the

Board is not precluded from announcing new policies in an adjudicative proceeding in order to provide a guide for subsequent proceedings. NLRB v. Textron, Inc., 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).

prior unit determination in reaching its decision. Accordingly, the Court concludes that the Board did not act in contravention of Section 9(b)(2) in exercising its discretion in establishing and applying standards for craft severance.

█ The Court now turns to plaintiff's allegation that the Board has denied it due process of law in dismissing its petition. Mere allegations of constitutional deprivations or conclusions on the part of the pleader are not sufficient to vest jurisdiction in this Court thereby allowing it to oversee the proceedings of the Board. This procedure would defeat the clear legislative intent that the Board exercise its discretion and expertise in representation matters. To sustain judicial intervention in such a context would be to sustain it any time an aggrieved party asserted that the Board had reached an erroneous or arbitrary conclusion on an election issue. This is precisely the interference with the Board's discretion which the Act forecloses.

█ There must be more than a "transparently frivolous" allegation of deprivation of constitutional rights to warrant intervention by this court. Fay v. Douds, 172 F.2d 720 (2d Cir. 1949). In the instant case, plaintiff has had a hearing before an administrative hearing officer and a review of that hearing by the Board. The Court finds no deprivation of constitutional rights.

Plaintiff also urges this Court not to dismiss its petition because it says that there is no other forum to review the action of the Board in its case and thus it is denied due process of law. The short answer to this contention is that plaintiff has had its hearing before a hearing body provided by Congress, which proceedings complied with the requirements of due process.

Final Board orders made reviewable by Sections 10(e) and (f) of the Act [Title 29 U.S.C. § 160(e), (f)] in the Court of Appeals do not include Board decisions in certification proceedings. These decisions are normally reviewable only when the dispute results in a Board finding that an unfair labor practice has been committed. Boire v. Greyhound Corp., 376 U.S. 473, 476–77, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

"That this indirect method of obtaining judicial review imposes significant delays upon attempts to challenge the validity of Board orders in certification proceedings is obvious. But it is equally obvious that Congress explicitly intended to impose precisely such delays." 376 U.S. at 477–78, 84 S.Ct. at 897.

Finally, plaintiff asserts that it has propounded certain interrogatories to defendants which will "raise a number of factual issues and will demonstrate jurisdiction in this Court." Memorandum in Opposition to Defendants' Motion to Dismiss, p. 9. The interrogatories, which are addressed to the individual Board members, seek information which includes queries into the decision-making process employed in this particular case.[4]

The Court need not reach the question of whether the interrogatories are an unwarranted intrusion into the decision-making process of the Board since the only substantial issue before the Court is whether or not the Board complied with Section 9(b)(2). As discussed before, it is clear from the Board's written decision alone, that the Board did not violate the statute. Ac-

---

4. "15. Please state whether or not the Board, its Executive Secretary or any other employee of the Board has issued instructions to the Regional Offices of the Board that craft severance petitions need not ordinarily go to a hearing.

"16. Do said instructions, referred to in the question immediately preceding, require that the Regional Directors clear any proposed hearing in craft severance cases with the Board's Executive Secretary before a hearing is ordered?

"17. State whether the instructions adverted to in the two questions immediately preceding were given and followed in connection with the petition of plaintiff which was dismissed by the Board on August 27, 1973, by a three to two vote." p. 3.

cordingly, plaintiff's attempts to delve into the process by which the decision was made are of no consequence in ruling on defendants' motion to dismiss.

For the foregoing reasons, it is ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction be, and the same hereby is, granted.