Richard CIHACEK, Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD, United Steelworkers of America, AFL–CIO–CLC, and Pacesetters Corporation, Defendants.

Civ. No. 79–0–17.

United States District Court, D. Nebraska.

Feb. 14, 1979.

David Herzog, Omaha, Neb., for plaintiff.

Dean Kratz, Omaha, Neb., for defendant Pacesetter.

Aileen Armstrong, Washington, D. C., for defendant NLRB.

## MEMORANDUM

DENNEY, District Judge.

On December 29, 1975, the National Labor Relations Board [the Board] conducted an election among the employees of the Pacesetter Corporation [Pacesetter] for the purpose of choosing a bargaining representative. A majority of the employees selected an association known as the Better Relations Committee [BRC], which was entrusted with the duty of representing the plaintiff and his co-workers. The BRC negotiated a collective bargaining agreement with Pacesetter after the 1975 election. This agreement expired on February 1, 1979.

On November 21, 1978, the United Steelworkers of America, AFL–CIO–CLC [the Steelworkers] filed a representation peti-

tion pursuant to Section 9(c) of the National Labor Relations Act [the Act], as amended (29 U.S.C. § 151 *et seq.*), seeking to represent all production and maintenance employees, including truckdrivers employed by Pacesetter. On November 24, 1978, the General Drivers and Helpers Union, Local No. 554 a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America [the Teamsters], filed a representation petition seeking to represent a union composed of Pacesetter's truckdrivers.

A consolidated hearing to determine the appropriate unit and other matters was scheduled for December 5, 1978. Copies of the Notice of Hearing were mailed to all parties, including the BRC care of Pacesetter Corporation, via certified mail.

At the hearing, Walter Kasal, the current president of the BRC appeared, and was accorded full intervenor status. However, Kasal did not appear due to any notice he had received, but rather in response to a subpoena issued to him by the Steelworkers. Kasal stated that the BRC disclaimed interest in any election which may be held.

During the course of the hearing, Pacesetter moved that both petitions be dismissed. In support of the motion, Pacesetter first stated that both petitioners had falsely stated on their respective petitions that there was no certified bargaining agent and that there was no current collective bargaining agreement. The hearing officer permitted the petitioners to amend the petitions to reflect the true status of the BRC. The second ground alleged by Pacesetter in support of its motion to dismiss was that the BRC had no notice of the hearing. The hearing officer referred the motion to the Regional Director, Seventeenth Region.

On December 22, 1978, the Regional Director, Region 17, issued a Decision and Direction of Election directing that an election be held among a unit composed of Pacesetter's production and maintenance employees, including truckdrivers, to determine whether they desired to be represent-

ed for collective bargaining purposes by the Steelworkers. The Regional Director stated that, insofar as the BRC indicated its desire not to be on the ballot and the Teamsters disclaimed interest in the unit found appropriate, only the Steelworkers would appear on the ballot. The Regional Director denied the motion to dismiss filed by Pacesetter based in part upon the allegation that the BRC had no notice of the hearing. The Regional Director stated that the record demonstrated that the Notice of Hearing was mailed via certified mail to the BRC and further stated that, while the BRC maintains that it did not receive the notice, it was otherwise notified of the time, place and subject matter of the hearing and was represented at the hearing by its current president. The Regional Director also denied a motion to intervene, or, in the alternative, to dismiss the election petitions filed after the hearing by the plaintiff alleging that Kasal was elected through improper procedures and that Kasal had no authorization to speak for the membership of the BRC in this matter. The plaintiff did not seek review of this decision by the Board. The Regional Director directed that the election be conducted on January 19, 1979.

On January 17, 1979, the plaintiff instituted this proceeding to enjoin the Board from conducting the election. On plaintiff's motion, this Court, *ex parte,* issued a temporary restraining order enjoining the Board from conducting the election. This order was extended, with the consent of the Board, until February 9, 1979, the date set for a hearing on plaintiff's motion for a preliminary injunction.

Prior to the hearing, the Board filed a motion to dismiss [Filing # 9] on the grounds that: (1) the Court lacks jurisdiction over the subject matter of the action, and (2) the complaint fails to state a claim upon which relief can be granted. Briefs were submitted on this issue.

On February 9, 1979, oral argument was presented on the Board's motion to dismiss. The motion was taken under advisement and further evidence was taken on plaintiff's motion for a preliminary injunction.

*Discussion*

In this case, the plaintiff seeks to enjoin the Board and its Regional Director for Region 17 from conducting a representation election among the production and maintenance employees and further seeks review of the Board ruling not to include the BRC on the election ballot. Plaintiff further asks this Court to order the Board to reopen a pre-election hearing or place the name of the BRC on the ballot. Alleging a violation of NLRB Rule 101.20(b) has taken place, plaintiff contends that his First, Fifth and Fourteenth Amendment rights would be violated if the BRC is not placed on the ballot.

Initially, the Court is faced with the question presented by the Board's motion to dismiss of whether it has jurisdiction over the subject matter of this action. If the Court does not, then the complaint must be dismissed in its entirety, with no review of the content of the administrative determination.

Board representation proceedings are non-adversary proceedings which do not result in the issuance of judicially reviewable final orders. *AFL v. NLRB,* 308 U.S. 401, 409, 60 S.Ct. 300, 84 L.Ed. 347 (1939). The general rule in this class of proceedings, therefore, is that federal district courts are without jurisdiction to review Board rulings in representation proceedings, and that such rulings are reviewable only in courts of appeals under Section 10(e) and 10(f) of the Act if and when they form the basis of a subsequent unfair labor practice proceeding. *Boire v. Greyhound Corp.,* 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). The only exceptions to this rule which have been recognized are (1) where the Board has contravened a clear and specific statutory mandate (*Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1959)), (2) where the Board has violated a constitutional right of the plaintiff (*Fay v. Douds,* 172 F.2d 720 (2d Cir. 1949)), and (3) where the Board has interfered with the Government's conduct of foreign rela-

tions (*McCulloch v. Sociedad Nacional,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963)). Obviously, the last exception is entirely inapposite.

In *Leedom v. Kyne, supra,* the Supreme Court confronted a situation in which the Board, despite a finding that one group of employees was professional and another was non-professional, nevertheless ordered the two groups joined in one bargaining unit and an election held. The victorious union, which had originally represented only professional employees, brought suit to invalidate the Board's action. The union based its suit on the fact that 29 U.S.C. § 159(b)(1) expressly prohibits the intermingling of professionals and non-professionals in one unit without the approval of a majority of the professional employees involved. The Board had refused to allow the professional employees to take a vote on the matter. The Federal District Court for the District of Columbia took jurisdiction because of the clear violation of the Act, and vacated the Board's decision. In affirming this, the Supreme Court stated that this was not a suit to review a decision within the Board's authority to make, but to "strike down an order of the Board made in excess of its delegated powers and *contrary to a specific prohibition in the Act.* Section 9(b)(1) is clear and mandatory." *Leedom v. Kyne, supra,* 358 U.S. at 188, 79 S.Ct. at 184. Section 9(b)(1) created a statutory right, and the Board's action in derogation of this right was "an attempted exercise of power that had been specifically withheld." *Leedom v. Kyne, supra,* 358 U.S. at 184, 79 S.Ct. at 184. The Court held that such exceptional circumstances warranted the District Court's taking jurisdiction.

Plaintiff would have this Court read the *Kyne* exception expansively. However, the Supreme Court has restricted the application of the *Kyne* doctrine. In *Boire v. Greyhound Corp., supra,* 376 U.S. at 480–81, 84 S.Ct. 894, the Supreme Court emphasized that this exception is characterized by "painstakingly delineated procedural boundaries" which may be resorted to only in "extraordinary circumstances." Specifically commenting on the narrow nature of the *Kyne* exception, the Court stated:

[W]hether Greyhound possessed sufficient indicia of control to be an "employer" is essentially a factual issue, unlike the question in *Kyne,* which depended solely upon construction of the statute. The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such situations has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the Act. *Boire v. Greyhound Corp., supra,* 376 U.S. at 481, 84 S.Ct. at 899.

■ Likewise, jurisdiction is not conferred on the district courts to consider "the wisdom of a particular board policy," for "*Kyne* and *Greyhound* teach us that disagreement with the Board on a matter of policy or statutory interpretation is not a sufficient basis for assumption of jurisdiction . . . ." *National Maritime Union v. NLRB,* 375 F.Supp. 421, 434 (E.D.Pa.) aff'd, 506 F.2d 1052 (3rd Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). Nor does an alleged abuse of discretion warrant district court review of Board decisions in certification matters. *See Bays v. Miller,* 524 F.2d 631, 633 (9th Cir. 1975). A district court's jurisdiction "must rest on more than a mere allegation of unauthorized Board action," *Machinery, Scrap Iron, etc. Employees Local 714 v. Madden,* 343 F.2d 497, 499 (7th Cir.), *cert. denied,* 382 U.S. 822, 86 S.Ct. 53, 15 L.Ed.2d 69 (1965), the Board must have disregarded a specific and unambiguous statutory directive. *McCulloch v. Libbey-Owens-Ford Glass Co.,* 131 U.S.App.D.C. 190, 191, 403 F.2d 916, 917 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).

■ Finally, the possibility of an absence of a remedy is not sufficient reason to

uphold district court jurisdiction. *See Bays v. Miller, supra,* 524 F.2d at 632–33 (9th Cir. 1975); *Local 1545, United Bhd. of Carpenters, etc. v. Vincent,* 286 F.2d 127, 132–33 (2d Cir. 1960), and cases cited therein; *Robinson v. McLeod,* 213 F.Supp. 111, 115 (S.D. N.Y.1963). The failure to provide for court review is an argument which should be "addressed to Congress and not the courts." *AFL v. NLRB, supra,* 308 U.S. at 411, 60 S.Ct. at 305. Hence, it is not the unavailability of a remedy which triggers the *Kyne* exception, but the violation of a clear statutory demand. *Bays v. Miller, supra,* 524 F.2d at 632–33; *Local 130, Internat'l Union of Elec., Radio & Machine Workers v. McCullogh,* 120 U.S.App.D.C. 196, 201, 345 F.2d 90, 95 (1965); *Local 1545, United Bhd. of Carpenters, etc. v. Vincent, supra,* 286 F.2d at 132–33; *Robinson v. McLeod, supra,* 213 F.Supp. at 115.

▪ Plaintiff's contention that the *Kyne* exception is applicable to the instant case is without merit. The Board in concluding that the BRC should not be on the election ballot, did not act in contravention of any specific statutory mandate. Nor did the Board act in excess of its statutory authority, for it is well-settled that Congress has entrusted the Board with wide discretion to establish and administer appropriate election procedures. *See NLRB v. A. J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); *Macy's Missouri-Kansas Division v. NLRB,* 389 F.2d 835, 842 (8th Cir. 1968).

▪ As there is no mandatory statutory provision governing the composition of election ballots, the Board's determination was merely an exercise of discretion based on an assessment of the facts before it. As the Court has already discussed, a mere disagreement with the Board's factual findings or "an erroneous assessment of the particular facts before the Board," *Boire v. Greyhound Corp., supra,* 376 U.S. at 480–81, 84 S.Ct. at 899, or even an abuse of discretion, *Bays v. Miller, supra,* 524 F.2d at 633, does not warrant district court review.[1] *See Board of Trustees of Memorial Hosp. v. NLRB,* 523 F.2d 845 (10th Cir. 1975).

▪ Plaintiff's other objection to the Board's decision in which he alleges that the BRC did not receive notice of the December 5, 1978, hearing is also insufficient to confer jurisdiction on this Court. As the Court views the record, the Board did not act contrary to the statute, but rather fully complied with it. On November 29, 1978, the Regional Office sent, via certified mail, a copy of the Notice of Hearing to the BRC. [Plaintiff's Exhibit # 3]. Sending such notice by registered mail was "reasonably calculated to give [the BRC] knowledge of the proceedings and the opportunity to be heard," *NLRB v. O'Keefe & Merritt Mfg. Co.,* 178 F.2d 445, 447 (9th Cir. 1949), and fully complied with Section 9(c)(1) of the Act. *NLRB v. Clark,* 468 F.2d 459, 463–64 (5th Cir. 1972); *NLRB v. O'Keefe & Merritt Mfg. Co., supra; see also Amalgamated Meat Cutters and Butcher Workmen of North America, Local 576 v. Allen,* 423 F.2d 267, 269 (8th Cir. 1970). Due notice "does not require receipt of actual notice in every case." *NLRB v. Clark, supra,* 468 F.2d at 464.

Moreover, the determination by the Board regarding the receipt of notice by BRC was primarily a determination based on an assessment of the facts. While the BRC maintained that it did not receive the mailed notice, the Regional Director found

---

1. In making its determination that the BRC disclaimed interest in participating in the election, the Board relied on the testimony of BRC president Kasal at the hearing that the BRC did not wish to participate in the election and on a telegram to the same effect sent to the Board prior to the hearing. Throughout this proceeding, the plaintiff has contended that Kasal did not have authority to speak for the BRC, because while he was elected president, his election was improper. The Board properly refus-

ed to consider this matter as questions relating to the validity of internal union elections are not governed by the Act and the Board has no authority to consider such claims. Such contentions are governed by the Labor-Management Relations and Disclosure Act and are handled by the Secretary of Labor. 29 U.S.C. § 481 *et seq.* (1975); *see Driscoll v. Internat'l Union of Operating Engineers,* 484 F.2d 682 (7th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1975).

that it was otherwise notified of the time, place, date and subject matter of the hearing and the president of the BRC was present and afforded a full opportunity to participate. Again, this determination which was based on the Board's assessment of the facts does not implicate the *Kyne* exception. *See Potter v. Castle Construction Co.,* 355 F.2d 212, 217 (5th Cir. 1966).

Plaintiff further alleges in his complaint that the Board's decision not to place the BRC on the ballot deprives plaintiff of a "vested property and personal right including the right of franchise in violation of the First Amendment, the Fifth and Fourteenth Amendment of the Constitution." This allegation is insufficient to confer jurisdiction on this Court. While there is some authority for the proposition, first advanced in *Fay v. Douds, supra,* that a district court can review Board representation proceedings where a complaining party makes a substantial showing that the Board action invades its constitutional rights, this proposition has never been adopted by the Supreme Court, and has been criticized and narrowly limited. *See Squillacote v. Internat'l Bhd. of Teamsters, Local 344,* 561 F.2d 31, 37–39 (7th Cir. 1977); *Midway Clover Farm Market, Inc. v. NLRB,* 318 F.Supp. 375, 378 n. 2 (D.D.C.1969); *see also Amalgamated Meat Cutters and Butchers, Local 576 v. Allen, supra,* 423 F.2d at 269 (8th Cir. 1970). Those courts which have accepted the proposition have done so to a very limited extent and require the complaining party to make a "strong and clear" showing that the Board deprived the party of its constitutional rights. *McCullogh v. Libbey-Owens-Ford Glass Co., supra,* 403 F.2d at 917. Plaintiff has made no showing of a violation of a constitutional right. The right asserted by plaintiff is a statutory right and is based on a reasonable construction of the statute, *see Hughes v. Getreu,* 266 F.Supp. 15, 17 (S.D.Ohio 1967), which is left to the Board's expertise. At most, the plaintiff contends that the Board erroneously determined that the BRC disclaimed interest; however, such a contention does not state a constitutional issue. *See Teamsters Local 690 v. NLRB,* 375 F.2d 966, 976–77

(9th Cir. 1967). As the court in *Internat'l Ass'n of Tool Crafts, etc. v. Miller,* 389 F.Supp. 1078, 1083 (E.D.Tenn.1974), *aff'd* 513 F.2d 631 (6th Cir. 1975), clearly observed:

> Mere allegations of constitutional deprivations or conclusions on the part of the pleader are not sufficient to vest jurisdiction in this Court thereby allowing it to oversee the proceedings of the Board. This procedure would defeat the clear legislative intent that the Board exercise its discretion and expertise in representation matters. To sustain judicial intervention in such a context would be to sustain it any time an aggrieved party asserted that the Board had reached an erroneous or arbitrary conclusion on an election issue. This is precisely the interference with the Board's discretion which the Act forecloses.

As the allegations of the complaint, properly interpreted, and the undisputed facts fail to show either a clear violation of a statutory command or a colorable deprivation of a constitutional right, this Court is without jurisdiction over the subject matter of this suit, which fact necessitates dismissal of the complaint.

An order shall issue contemporaneously with this Memorandum Opinion.